# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

| | |
|---|---|
| LAURA CUEVAS, ) | |
| ) | Civil Action No. 2:18-cv-00371-UA-CM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VERIZON WIRELESS PERSONAL ) | |
| COMMUNICATIONS, LLP, EQUIFAX ) | |
| INFORMATION SERVICES, LLC, ) | |
| TRANS UNION, LLC, and EXPERIAN ) | |
| INFORMATION SOLUTIONS, INC., | |
| Defendants | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO VERIZON WIRELESS PERSONAL COMMUNICATIONS, LLP'S <u>MOTION TO COMPEL ARBITRATION AND TO STAY</u>**

1

I.     INTRODUCTION

Verizon, through its agent Best Buy, sold Mrs. Cuevas new cell phones using retail installment sales contracts. Under those contracts, Mrs. Cuevas had a (14) day window to return the phones and cancel the contracts for a full refund. Five days after the purchase, Mrs. Cuevas returned the phones to Best Buy and cancelled the contracts.

Since then, Verizon has repeatedly tried to collect over $2,000 from Mrs. Cuevas for the cell phones that she returned. Verizon then reported negative, inaccurate credit information about Mrs. Cuevas to its three co-defendants.[1] After refusing to correct the accounting and inaccurate reporting, Mrs. Cuevas sued the Defendants under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 *et seq.* ("FCCPA"). Verizon now moves to compel arbitration.[2]

The Court should deny Verizon's motion for three reasons.

First, Florida law requires that the seller and buyer sign the retail installment sales contracts before they become enforceable and valid. In seeking to compel Mrs. Cuevas to arbitration, Verizon relies on retail installment sales contracts that neither Verizon, nor its agent Best Buy, signed. Thus, under Florida law, the parties formed no valid retail installment sales contract, and consequently, no agreement to arbitrate.

Second, Florida case law holds that if a party cancels the contract, which includes an arbitration agreement, before arbitration is sought; that cancellation renders both agreements void as if none existed. Mrs. Cuevas cancelled the retail installment sales

---

[1] Equifax Information Services, LLC, Trans Union, LLC, and Experian Information Solutions, Inc.
[2] Only Verizon seeks to compel arbitration.

2

contracts, which included the arbitration agreement, before Verizon moved to compel arbitration. As such, the Court has no contractual basis upon which to compel Mrs. Cuevas to arbitrate because both agreements were cancelled and abrogated.

Last, Mrs. Cuevas's claims under the FCRA and FCCPA against Verizon do not fall under the purview of the retail installment sales contracts or arbitration agreement. Specifically, the arbitration agreement's language specifically excludes "private attorney general theories of liability." Mrs. Cueva's claims are exactly that, claims brought by a consumer who the law consider to be a "private attorney general." Based that plain language, Mrs. Cuevas should not be compelled to arbitrate her claims.

Even if her claims aren't excluded, all of the facts giving rise to Mrs. Cuevas's claims arose after she cancelled the retail installment sales contracts, including the arbitration agreements. Given that fact, Supreme Court case law holds Mrs. Cuevas should not be compelled to arbitration because no agreement to arbitrate existed when her causes of action arose.

In all, the Court should deny Verizon's motion to compel arbitration in its entirety because no valid and enforceable arbitration agreement exists between Verizon and Mrs. Cuevas.

II.     BACKGROUND

In March 2016, Mrs. Cuevas walked into a Best Buy store in Naples, Florida, looking to upgrade several cell phones. (Plt.'s Complaint ¶ 28, ECF No. 1) ("Compl."). Mrs. Cuevas saw that Best Buy offered a fourteen (14) day money back return and cancellation policy on all cell phones. (*Id*. ¶ 27).

Best Buy offered a bundled deal to Mrs. Cuevas for the cell phones and all she had to do was agree to change cell service to Verizon at some time after. (Dft.'s Motion to Compel ("Mot."), Exhibit A, ECF No. 21-2). The deal allowed her to spread the cost of the phones over twenty-four (24) monthly payments. (*Id.*) Mrs. Cuevas thought about it and decided to buy the new phones from Best Buy knowing that she had time to cancel everything and get her money back. (Compl. ¶¶ 28-29).

Best Buy drafted three (3) retail installment sales contracts ("Agreements") for Mrs. Cuevas to sign. (Mot. Exhibit A). Each Agreement is composed of four pages as indicated by the numerical page order at the bottom of each page. (*Id.*)

The Agreements explicitly state at the top of page one (1) that they are "**Subject to State Regulation**." (*Id.*) The Agreements identify Best Buy as the "Seller" and Verizon as the "Creditor." (*Id.*) Further below, the financial terms and conditions are explained. (*Id.*)

The Agreements' second page contemplates an entirely separate agreement:

AGREEMENT. THIS RETAIL INSTALLMENT SALES AGREEMENT (AGREEMENT) REQUIRES THAT YOU AGREE TO AND MAINTAIN SERVICE WITH VERIZON WIRELESS UNDER YOUR CUSTOMER AGREEMENT. ALTHOUGH YOUR CUSTOMER AGREEMENT WITH VERIZON WIRELESS IS A SEPARATE DOCUMENT…

(*Id.*) And they also appear to incorporate a separate arbitration clause. (*Id.* ¶ 1).

The Agreements recognize that Best Buy must assign the Agreements to Verizon, which could cause a delay in accepting the Agreements or activating the device purchased. (*Id.* ¶ 2) ("if a delay in accepting this Agreement or activating your Device results in any charges becoming due on a date(s) later than the payment schedule, we will provide you with an updated payment schedule on your bill. If you do not activate your Device within

45 days of receipt, or if customers cancels service for a device subject to this agreement, Verizon Wireless may charge customer the entire remaining balance owed for the device as soon as the next bill.").

On page three (3) of the Agreements they cite the "Verizon Wireless' Website at www.verizonwireless.com" where the alleged "Customer Agreement" may be found. (*Id*. ¶ 7). And on the next page, the Agreements state in big bold letters:

> **BUYER'S RIGHT TO CANCEL**
>
> **If you do not want the Device purchased under this Agreement, you may cancel by contacting the Seller in person within 14 days of your acceptance. You must return your Device pursuant to the Seller's Return Policy to obtain a refund. If you do not return your Device within the return period, you will be charged for the entire remaining balance for your Device. Buyers in North Carolina and Massachusetts may also cancel by providing written notice of cancellation at any time prior to midnight of the third business day after you accept this Agreement by using the attached Notice of Cancellation form.**

(*Id*. pg. 4). Several paragraphs below, the Agreements again state that "**This contract is covered by state and federal laws, and you have the rights of a buyer under such laws.**" (*Id*. ¶ 5). At the bottom of page four (4) on each Agreement is a place for the "Buyer's Signature" and date. (*Id*.) None are signed by Mrs. Cuevas or Best Buy.

Instead, on a separate page outside the confines of the Agreements' four pages, is Mrs. Cuevas signature below a paragraph. (Mot. Exhibit A, pg. 6 of 16; 11 of 16; 16 of 16). Only Mrs. Cuevas signature is present. (*Id*.) The paragraph immediately above her signature states:

> I acknowledge that Best Buy has on this date presented me with a printed and completed Retail Installment Sale Agreement/Notice to Buyer (the "Agreement") and I was given an opportunity to review the

> terms, including 24 monthly payments and my right to cancel within 14 days. I understand that Best Buy is not authorized to make or accept any changes to the Agreement and that if there are any markings or strikeouts they are not binding on Best Buy or its assignee VZW. By signing my name under the Notice to Buyer, I acknowledge that I have read this Agreement and that Best Buy gave me a copy of my signed Agreement.

(*Id.*)

Five (5) days after Mrs. Cuevas purchased the phones, and well within the cancellation period advertised, Mrs. Cuevas returned the phones to Best Buy and cancelled everything. (Compl. ¶ 30).

Since March 2016, Verizon has repeatedly harassed Mrs. Cuevas by calling and sending letters that demand she pay $2,326. (*Id.* ¶31). A sum that represents the amount Mrs. Cuevas would have owed if she didn't return the phones to Best Buy as permitted under the Agreements. (*Id.* ¶ 34).

Mrs. Cuevas has communicated with Verizon on numerous occasions explaining that she doesn't owe the $2,326 because she returned the phones as allowed. (*Id.* ¶ 35). In those calls, Verizon's own representatives confirmed that she doesn't owe Verizon anything, but the harassment continued. (*Id.* ¶¶ 35-37). Mrs. Cuevas has also sent documents to Verizon showing that she doesn't owe any amount to no avail because Verizon hasn't cared. (*Id.*)

Instead, Verizon contracted with two separate debt collection companies who also harassed Mrs. Cuevas in attempt to collect the $2,326 for Verizon. (*Id.* ¶¶ 32-33). And when that didn't work, Verizon reported negative and erroneous credit information about Mrs. Cuevas to Experian, Trans Union, and Equifax, which caused her credit score to

plummet. (*Id*. ¶¶ 38-42). What's more, the negative credit reporting, in part, caused Nationstar Mortgage, LLC to deny Mrs. Cuevas's refinancing application. (*Id*. ¶¶ 42-45).

What should have been a simple transaction has turned into a year's long nightmare that has left Mrs. Cuevas feeling devastated and humiliated. After she tried to work with Verizon and the credit reporting agencies for years to get everything fixed, Mrs. Cuevas made a choice. And that choice was to file suit in this Court.

Now, though, Verizon has taken a different approach. Different in the sense that Verizon no longer wants delay, and instead, wants Mrs. Cuevas to arbitrate her claims. As outlined below, the Court should deny Verizon's motion to compel in its entirety and give Mrs. Cuevas her day in court.

### III.     MEMORANDUM OF LAW

Verizon moves to compel arbitration under the retail installment sales contracts attached to its motion to compel. (Mot. Exhibit A, B). Mrs. Cuevas disputes that any valid agreement to arbitrate exists between her and Verizon. (Cuevas Aff. ¶ 6-8 attached hereto as Exhibit A).

Contrary to Verizon's assertion (Mot. pg. 5), the party seeking arbitration must prove the existence of a valid and enforceable agreement to arbitrate. *Steve Owren, Inc. v. Connolly*, 877 So. 2d 918, 920 (Fla. 4th DCA 2004); *see Shearson, Lehman, Hutton, Inc. v. Lifshutz*, 595 So. 2d 996, 997 (Fla. 4th DCA 1992) (proponent of arbitration has burden of establishing an enforceable written agreement to arbitrate). The moving party must prove its existence under a "summary judgment-like standard." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) ("We agree with our sister

circuits that a summary judgment-like standard is appropriate and hold that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.") *citing* Fed. R. Civ. P. 56(a).

This Court must decide whether a valid agreement to arbitrate exists between the parties under Florida law. *Bazemore*, 827 F.3d at 1329 (citations omitted); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

While normally a court applies a presumption favoring arbitration; that "presumption *does not* apply to disputes concerning whether an agreement to arbitrate has been made [like here]." (emphasis added) *Bazemore v. Jefferson Capital Sys., LLC,* 2016 U.S. LEXIS 12403 (11th Cir. 2016); *quoting Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) (emphasis added); *see also Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 301 (2010) (directing courts to apply the presumption of arbitrability only to a validly formed and enforceable arbitration agreement).

Applying these standards, a district court may compel arbitration only if it concludes "as a matter of law that [the] parties did or did not enter into an arbitration agreement [and] only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1333 (*citing* Fed. R. Civ. P. 56(a)).

    **A.    THE COURT SHOULD DENY THE MOTION TO COMPEL ARBITRATION BECAUSE UNDER FLORIDA LAW THE PARTIES FORMED NO VALID AGREEMENT TO ARBITRATE.**

Florida's Retail Installment Sales Act ("RISCA") governs whether the parties formed a valid retail installment sales contract.[3] *Bazemore*, 827 F.3d at 1329 ("state law generally governs whether an enforceable contract or agreement to arbitrate exists.") (*citing Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). The Agreements here are retail installment sales contracts governed by the RISCA. (Mot. Exhibit A).

Under the RISCA, "[a] retail installment contract shall be in writing, *shall* be signed by both the buyer and the seller, and shall be completed as to all essential provisions prior to the signing of the contract by the buyer." Fla. Stat. § 520.34(1)(a) (emphasis added). Florida's Legislature used the term "shall" in the RISCA to denote that both the "buyer" and "seller" <u>must</u> sign before the parties form a valid and enforceable retail installment sales contract. *See Neal v. Bryant*, 149 So. 2d 529, 532 (Fla. 1962) ("use of the word 'shall' in the statute in question which, according to its normal usage, has a mandatory connotation.").

The signature requirement is mandatory and can't be waived. Fla. Stat. 520.40. ("Any waiver by the retail buyer [Ms. Cuevas] of any provisions of this act or of any

---

[3] The documents attached to Verizon's motion to compel indicate that the payment terms for the phones were by installment. Fla. Stat. § 520.31(14): "Retail installment contract" or "contract" means an instrument or instruments reflecting one or more retail installment transactions entered into in this state pursuant to which goods or services may be paid for in installments.

remedies granted to the buyer by this act shall be unenforceable and void."). Moreover, a failure to comply with this specific provision subjects the violator to civil and criminal liability. *See* Fla. Stat. §§ 520.39(1), 520.995(1)(a); *see also Martinez v. Rick Case Cars, Inc.*, 278 F. Supp. 2d 1371, 1373 (S.D. Fla. 2003) (denying motion to dismiss plaintiff's claim under the Florida Motor Vehicle Retail Sales Finance Act because, in part, defendant never signed the retail installment contract) *citing* Fla. Stat. § 520.07(1)(a)).[4]

Here, only Mrs. Cuevas signed the Agreements. (Mot. Exhibit A; Meryl Aff. ¶ 3; Cuevas ¶ 9). Given the RISCA's mandatory language, its anti-waiver provision, and the civil and criminal consequences of violating the RISCA, no valid retail installment sales contract was formed, and as a result, no valid agreement to arbitrate exists between Mrs. Cuevas and Verizon.

Even looking at Mrs. Cuevas's intent, it is evident that she never intended to be bound by an agreement to arbitrate. *See Williams v. MetroPCS Wireless, Inc.*, 09-22890-CIVALTONAGA, 2010 WL 62605, at *7 (S.D. Fla. Jan. 5, 2010) (stating that despite no signature, "acceptance of the contract may be manifested by performance.") (citations omitted). Mrs. Cuevas returned the phones and cancelled any alleged agreement five days after buying the phones. (Compl. ¶ 30; Cuevas Aff. ¶ 6-7).

Mrs. Cuevas's actions demonstrate her clear intent not to be bound by any agreement with Verizon, much less one requiring arbitration. *See Williams*, 2010 WL 62605, at *7 ('the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.'") *citing*

---

[4] "A retail installment contract shall be in writing, shall be signed by both the buyer and the seller, and shall be completed as to all essential provisions prior to the signing of the contract by the buyer."

*Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (*quoting Goldberg v. Bear, Stearns & Co., Inc.*, 912 F.2d 1418, 1419–20 (11th Cir. 1990)).

Since Verizon and Best Buy didn't sign the Agreements, and Mrs. Cuevas made her intent clear by returning the phones and cancelling all terms and obligations, no valid retail installment sales contract was formed, and no valid agreement to arbitrate exists between the parties. Therefore, the Court should not compel arbitration because "parties [cannot] be required to arbitrate when they have not agreed to do so." *Goldberg*, 912 F.2d at 1419 *citing Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, —— (1989).

    **B.**    **EVEN IF AN ARBITRATION AGREEMENT WAS FORMED, MRS. CUEVAS CANCELLED THE CONTRACTS AND THE ARBITRATION AGREEMENTS, RENDERING BOTH ABROGATED.**

Federal and state case law holds that when a contracting party cancels a contract, which includes an arbitration agreement, that cancellation renders both void as if neither existed. Two opinions are instructive.

In *Henderson v. Coral Springs Nissan, Inc.*, the Fourth District Court of Appeal reversed the trial court's decision compelling arbitration. *Henderson v. Coral Springs Nissan, Inc.*, 757 So. 2d 577, 577 (Fla. 4th DCA 2000). There, plaintiff contracted with the dealership to buy a car. The parties' contract had an arbitration agreement. Thereafter, the dealership "unilaterally rescinded the contract and repossessed the [car]" before it ever compelled arbitration. *Henderson*, 757 So. 2d at 577–78. The plaintiff sued and the dealership moved to compel arbitration based on the parties' contract. The trial court

agreed with the dealership and compelled arbitration. The Fourth District Court of Appeal reversed the lower court.

In its opinion, the Fourth District Court of Appeal reversed because "no enforceable arbitration clause [can exist] when a contract is rescinded prior to a motion to compel arbitration[]" because rescission of the contract renders both the contract and arbitration agreement unenforceable and void from inception. *Henderson*, 757 So. 2d at 578 (*citing Hymowitz v. Drath*, 567 So. 2d 540 (Fla. 4th DCA 1990) (reversing arbitration award after the arbitrators cancelled "the very agreement that contained the arbitration clause from which the arbitrators derive their authority.")). So too here.

Like the dealer in *Henderson*, Mrs. Cuevas returned the phones and cancelled the Agreements before Verizon moved to compel arbitration. (Cuevas Aff. ¶¶ 6-8). That cancellation, which the Agreements clearly allowed, abrogated not only the contract, but also the arbitration agreement. The end result is that Verizon has no contractual basis to compel Mrs. Cuevas to arbitrate her claims. The *Henderson* holding, and its application to facts like the present, isn't an outlier.

In *Jones v. TT of Longwood, Inc.* the United States District Court for the Middle District of Florida applied *Henderson* to similar facts and denied the dealership's motion to compel arbitration. *Jones v. TT of Longwood, Inc.*, 6:06-CV-651-ORL-19, 2006 WL 2682836, at *1 (M.D. Fla. Sept. 18, 2006). The plaintiff, like Mrs. Cuevas, argued against arbitration because the parties contract, including the arbitration agreement, was rescinded. The Middle District agreed with the plaintiff and denied arbitration. In doing so, the District Court held that "arbitration cannot be compelled because under the

12

allegations of the Complaint, no valid, written agreement to arbitrate exists." *Jones*, 2006 WL 2682836, at *2.

These decisions follow general Florida contract law that looks at the contracting parties' intent when deciding whether to compel arbitration. *See Williams*, 2010 WL 62605, at *7 (stating that "no signature is required to meet the "written" requirement of the FAA; rather acceptance of the contract may be manifested by performance.") (*citing Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005)).

Again, if no agreement to arbitrate exists, the Court should not compel arbitration because "parties [cannot] be required to arbitrate when they have not agreed to do so." *Goldberg*, 912 F.2d at 1419 *citing Volt Information Sciences, Inc.*, 489 U.S. at ——.

### C. MRS. CUEVAS'S CLAIMS AGAINST VERIZON DO NOT ARISE UNDER THE AGREEMENTS.

"[I]t is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "[N]othing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Id.*

> 1. *The Customer Agreement explicitly excludes private attorney general theories of liability from arbitration.*

Verizon argues that the arbitration agreement's broad language encompasses Mrs. Cuevas's claims under the FCRA and FCCPA. (Mot. pg. 6). It relies on the Customer Agreement, which contains the arbitration agreement, that states: "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM

13

ANY EQUIPMENT, PRODUCTS OR SERVICES YOU RECEIVE FOM US…" will be resolved by arbitration. (Ex B, ¶ 8).[5]

Recently in *Gamble v. New England Auto Fin., Inc.*, the Eleventh Circuit Court of Appeals faced similar broad language in an arbitration agreement. The Eleventh Circuit held that "[a]lthough this language makes the arbitration provision broad, it does not make it limitless." *Gamble v. New England Auto Fin., Inc.*, 17-15343, 2018 WL 2446607, at *2 (11th Cir. May 31, 2018) *citing Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (stating "the term 'arising out of' is broad, but not all encompassing" while recognizing that the dispute in question must be "an immediate, foreseeable result of the performance of contractual duties"). Verizon has done the Court a favor by specifically limiting the arbitration agreement's reach.

In the Customer Agreement, Verizon specifically excluded certain claims from arbitration. The Customer Agreement states: "**NO…PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT.**" (Mot. Exhibit B pg. 9 of 11 paragraph 3) (emphasis original).[6]

Here, Mrs. Cuevas sued Verizon under the FCCPA and FCRA. (Compl. ¶¶105-114). Numerous appellate courts and district courts have held that the FCRA, FCCPA, and other similar consumer protection type statutes are "private attorney general" theories of liability. *See e.g. In re Jones*, 494 B.R. 569, 571 (Bankr. M.D. Fla. 2013) (finding that

---

[5] The Customer Agreement doesn't define the word "dispute."
[6] Immediately after this provision the Customer Agreement states: "ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR."

"negotiated attorney's fees [were] reasonable given the Debtor's role as a 'private attorney general' in enforcing the consumer statutes", specifically FCCPA and FDCPA claim); *Drossin v. Nat'l Action Fin. Services, Inc.*, 255 F.R.D. 608, 612 (S.D. Fla. 2009) (FDCPA and FCCPA); *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (FCRA). *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) (FDCPA) *citing Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) (noting how the FDCPA "enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others"); *Tolentino v. Friedman*, 46 F.3d 645, 651–52 (7th Cir. 1995); *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998), *as amended* (Mar. 26, 1999) (TILA); *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990). The Customer Agreement has therefore clearly and unmistakably excluded Mrs. Cuevas's claims from being brought in arbitration.

The Ninth Circuit Court of Appeals in *Mohamed v. Uber Techs., Inc.* recently dealt with this issue after a California District Court denied a motion to compel arbitration. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1213 (9th Cir. 2016). The provision at issue stated[7]:

> There will be no right or authority for any dispute to be brought, heard, or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall not be severable from this Arbitration Provision in any case in which a

---

[7] Two arbitration clauses were at issue in *Mohammed*, but the only applicable provision for our purposes was is the 2013 that "specifically required the district court, and not the arbitrator, to consider certain challenges to the arbitration provision, including challenges to the enforceability of the PAGA waiver." *Mohamed*, 848 F.3d at 1212.

> civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

*Mohamed*, 848 F.3d at 1213. The Ninth Circuit agreed, in part, with the lower court that the private attorney general waiver was invalid under California law. *See Mohamed*, 848 F.3d at 1213. The same applies in Florida.

In Florida, "the rights of access to courts and trial by jury may be contractually relinquished [via an arbitration agreement], subject to defenses to contract enforcement including voidness for violation of the law or public policy, unconscionability, or lack of consideration.... *No valid agreement exists if the arbitration clause is unenforceable on public policy grounds*." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 465 (Fla. 2011) *citing Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 398 (Fla. 2005); *Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87 (Fla. 2d DCA 2003) (automobile purchase contract providing for arbitration which limited remedies provided by Florida Deceptive and Unfair Trade Practices Act held void as contrary to public policy). [8]

Here, the Court should hold Verizon to the plain-language of its contract, mainly that no "private attorney general claims" can be arbitrated and allow Mrs. Cuevas's claims against Verizon to proceed in this Court.

---

[8] *See Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630 (Fla. 2d DCA 2008) (striking clause that capped non-economic damages and punitive damages and required the off-set of collateral source payments as substantively unconscionable, on the ground that it would deprive consumer of statutory rights); *Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham*, 953 So. 2d 574, 578 (Fla. 1st DCA 2007), *abrogated by Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146 (Fla. 2016) (arbitration clauses capping noneconomic damages and waiving punitive damages are void as against public policy expressed in the Assisted Living Facilities Act); *Alterra Healthcare Corp. v. Bryant*, 937 So. 2d 263, 266 (Fla. 4th DCA 2006) (same); *SA-PG-Ocala, LLC v. Stokes*, 935 So. 2d 1242 (Fla. 5th DCA 2006) (arbitration clause limiting various types of damages violated the state nursing home act and thus violated the public policy of the state).

        2.    *Mrs. Cuevas's claims occurred after she cancelled the Agreements; thus, her claims cannot arise under the Agreements.*

As noted, the contractual obligation to arbitrate is not limitless despite any broad arbitration clause bargained for. *See Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 193–201 (1991) (finding that a court can't mandate arbitration of a dispute that arose after the expiration of an arbitration agreement even when the parties bargained for a "broad arbitration provision."). Unlike the cases Verizon cited to support its motion to compel arbitration (Mot. pgs. 6-7), Mrs. Cuevas cancelled the Agreements within the (14) day cancellation period. (Compl. ¶ 30; Cuevas Aff. ¶ 6-7).

Stated differently, Ms. Cuevas isn't asserting that Verizon breached the Agreements in any way; instead, she claims that Verizon attempted to collect illegitimate debts from her, and when that didn't work, Verizon then furnished its co-defendants with wholly inaccurate credit information *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109 (11th Cir. 2001). All of these facts occurred after she cancelled the Agreements. A cancellation that effectuated the end of any obligation she had to arbitrate a post-expiration claim with Verizon. *Dist. No. 1-Marine Engineers Beneficial Ass'n, AFL-CIO v. GFC Crane Consultants, Inc.*, 331 F.3d 1287, 1291 (11th Cir. 2003) ("arbitration obligations end upon expiration of the [agreement] unless the parties have agreed otherwise.…[L]ike all rights granted by statute, may not be waived except by clear, explicit language.") (*citing Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983) ("[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable.").

At bottom, Mrs. Cuevas cancelled the Agreements, including the arbitration clause, and under Eleventh Circuit precedent: "arbitration is strictly a matter of contract, [and a district court] *cannot* compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) (emphasis added) (*relying on Armada Coal Exp., Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1567–68 (11th Cir. 1984) (refusing to "compel arbitration of claims that arose after a contract with a valid arbitration agreement had been breached…").

IV.   **CONCLUSION**

Before the "heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated [as] . . . it remains a fundamental principle that arbitration is a matter of contract, not something to be foisted on the parties at all costs." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, J.) (emphasis in original).

As outlined above, Mrs. Cuevas never agreed to arbitrate her claims with Verizon. And even if she did, Mrs. Cuevas made her intent clear that she didn't want arbitration after she canceled the Agreements as allowed. In the end, though, Verizon hasn't shown that a valid and enforceable agreement to arbitrate exists, and without that, its motion to compel arbitration should fail.

WHEREFORE, Mrs. Cuevas respectfully requests that the Court deny Verizon's motion to compel arbitration in its entirety, and any further relief it deems necessary.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Middle District of Florida Local Rule 3.0(j), Plaintiff requests that Defendant, Verizon Wireless Personal Communications, LLP's Motion to Compel Arbitration and Plaintiff's Response in Opposition be set for oral argument as the motion and response present complex legal issues. Plaintiff estimates that the time required for oral argument would be 30 to 45 minutes.

Respectfully Submitted,

*/s/ Darren Newhart*
Darren R. Newhart, Esq.
Fla. Bar No.: 115546
Darren@cloorg.com
J. Dennis Card, Jr.
Fla. Bar No.: 487473
Dennis@cloorg.com

CONSUMER LAW ORGANIZATION, P.A.
721 US Highway 1, Ste. 201
North Palm Beach, FL 33408
Office: 561-822-3446

Christopher W. Legg, Esq.
FL Bar No.: 44460

CHRISTOPHER W. LEGG, P.A.
499 E. Palmetto Park Rd., Ste. 228
Boca Raton, FL 33432
Office: 954-962-2333
Chris@theconsumerlawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2018, a true and correct copy of the foregoing was served via the Court's CM/ECF system on all counsels of record below:

Service List:

Jeffrey Blaker, Esq.
1801 Centrepark Dr. E., Ste. 200
W. Palm Beach, FL 33401
Office: 561-697-8088
Jblaker@conroysimberg.com

Franklin Cosmen, Jr. Esq.
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Office: 305-670-1101
Fcosmen@qpwblaw.com

Michael Maugans, Esq.
600 Brickell Ave.
Brickell World Plaza, Ste. 3300
Miami, FL 33131
Office: 305-714-9769
Mmaugans@jonesday.com

J. Tony Love, Esq.
1180 Peachtree Street
Atlanta, GA 30309
Office: 404-215-5913
TLove@kslaw.com

/s/ *Darren Newhart*
Darren Newhart, Esq.