UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAURA CUEVAS,

    Plaintiff,

v.                                         Case No: 2:18-cv-371-FtM-99CM

VERIZON WIRELESS PERSONAL
COMMUNICATIONS, LLP, EQUIFAX
INFORMATION SERVICES, LLC,
TRANS UNION LLC, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,

    Defendants.

_____

# OPINION AND ORDER

This matter comes before the Court on Defendant Verizon Wireless Personal Communications, LLP's Motion to Reconsider its Previously-Denied Motion to Compel Arbitration (Doc. #34) filed on September 18, 2018. Plaintiff filed a Response in Opposition (Doc. #38) on October 2, 2018, and Verizon replied (Doc. #43). Plaintiff moved to exclude the documentation offered by Verizon in support of its Motion to Reconsider. (Doc. #45.) For the reasons set forth below, the Motion for Reconsideration is granted and the Court considers Verizon's newly submitted evidence, but Verizon's request to compel arbitration is denied.

**I.**

This fair credit case[1] stems from defendants' attempt to collect a $2,326 debt from plaintiff Laura Cuevas, which is the amount she agreed to pay under three Retail Installment Sales contracts for three cellular telephones she purchased at a Best Buy store in 2016. (Doc. #21-2.) The Court previously denied Verizon's Motion to Compel Arbitration without prejudice because Verizon had not presented the Court with a copy of the Retail Installment Sales Contracts signed by both plaintiff and Verizon (or Best Buy) as required by Florida's Retail Installment Sales Contract Act, Fla. Stat. § 520.34(1)(a) (RISCA). (Doc. #30.)

Verizon moves for reconsideration, but does not present the Court with signed copies of the installment contracts. Instead, Verizon submits three "Verizon Wireless Customer Agreements" that are signed by plaintiff only (Doc. #43-1) which were obtained from Best Buy after the Court's ruling on the Motion to Compel Arbitration. These customer agreements outline the features of the calling plan plaintiff signed up for when she purchased the phones. Verizon argues that the three customer agreements demonstrate that arbitration is appropriate.[2]

---

[1] Plaintiff brings claim under the Fair Credit Reporting Act and the Florida Consumer Collection Practices Act.

[2] After filing its Motion for Reconsideration, Verizon appealed the Court's decision denying arbitration to the Eleventh Circuit Court of Appeals pursuant to 9 U.S.C. § 6. (Doc. #36.) A notice of appeal filed after a motion for reconsideration would

**II.**

A non-final order may be revised at any time before the entry of a final judgment. Fed. R. Civ. P. 54(b). The decision to grant a motion for reconsideration is within the sound discretion of the trial court. Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993). "The courts have delineated three major grounds justifying reconsideration of such a decision: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994).

Verizon asserts that reconsideration is warranted because it has submitted new evidence that further supports its argument for arbitration, which it obtained after the Court's ruling on the Motion to Compel Arbitration. Plaintiff responds that the Verizon Customer Services Agreements are not "new evidence" because it appears that Verizon had the documents in its possession during the briefing of the Motion to Compel Arbitration, or at least before the Court ruled on the Motion to Compel. Plaintiff also criticizes the effort Verizon employed to obtain the signed Customer Agreements before the Court ruled on the Motion to Compel.

---

not "oust the district court of jurisdiction". United States v. Wilson, 307 F. App'x 314, 315 (11th Cir. 2009).

Plaintiff also substantively responds, arguing that the newly submitted evidence changes nothing.[3]

Verizon's Reply also includes the Affidavit of Meryl Friedman, Senior Paralegal with Verizon, who asserts that although it had made a request to Best Buy, it did not receive the signed Customer Agreements from Best Buy until August 31, 2018, nine days after the Court denied the Motion to Compel Arbitration. (Doc. #43-1, ¶ 4.)

---

[3] The Court denies plaintiff's Motion to Exclude the Verizon Wireless Customer Agreements as inadmissible under Federal Rule of Evidence 803(6). (Doc. #45.) Plaintiff argues that the Customer Agreements are *Best Buy's* unauthenticated business records and Meryl Friedman, a Verizon employee, cannot authenticate them. Yet the Customer Agreements clearly state that they are "Verizon Wireless Customer Agreements", and just because Verizon had to request them from Best Buy does not convert the agreements into Best Buy's business records. Ms. Friedman asserts in her Affidavit that the Customer Agreements are records made in the regular course of business at or near the time of the events described in the documents. (Doc. #43-1, ¶ 2.) The Customer Agreements also show no indicia of unreliability and plaintiff has otherwise offered no evidence that the signed Customer Agreements are not authentic. Notably, plaintiff did not object to the admissibility of the Customer Agreements when it opposed the Motion for Reconsideration.

The Court also rejects plaintiff's argument that Ms. Friedman's Affidavit should be excluded because the Affidavit was improperly offered by Verizon in Reply when it should have been offered with its initial Motion for Reconsideration. Although affidavits are generally filed and served with a motion, see Fed. R. Civ. P. 6(c), here, Ms. Freidman's Affidavit responded to plaintiff's argument in Response (Doc. #38) that Verizon possessed or at least was not diligent in obtaining the Customer Agreements when the initial Motion to Compel Arbitration was briefed. Ms. Friedman's Affidavit explains the timeline of when Verizon received the signed Customer Agreements. (Doc. #43-1, ¶¶ 3-4.)

The Court finds no failure on Verizon's part to exercise diligence in obtaining the Customer Agreements. The Court notes it would have only benefited Verizon to obtain the signed Customer Agreements to support its original Motion to Compel Arbitration. Verizon has shown a reasonable basis for reconsideration, and the Court will consider the newly submitted Customer Agreements. (Doc. #34-1.)

**III.**

**A. Facts as Alleged in the Complaint**

On March 13, 2016, plaintiff visited a Best Buy store in Naples, Florida to purchase new cellular phones. Plaintiff purchased three cellular phones and transferred her cellular service from AT&T to Verizon. Before Verizon activated the phones, plaintiff signed three Retail Installment Contracts to pay the purchase price of each phone over 24 months, agreeing to the Terms and Conditions of the Verizon Wireless Customer Agreement.[4] (Doc. #21-2.) On that date, Verizon had a 14-day money back return and cancellation policy for wireless devices. Plaintiff also signed three Verizon Wireless Customer Agreements. (Doc. #34-1).

---

[4] True and correct copies of the Retail Sales Contracts (Doc. #21-2) and the "My Verizon Wireless Customer Agreement" (Doc. #21-3) are attached to the Affidavit of Meryl Friedman, employed by Verizon Corporation Resources Group LLC as a Senior Paralegal. (Doc. #21-1.)

None of the documents presented to the Court were signed by Verizon or Best Buy.

Unsatisfied with the services provided, plaintiff visited the same Best Buy store five days later and returned the cellular phones and cancelled her cellular service, which was within the fourteen-day return and cancellation period. Despite the return, Verizon sent plaintiff bills demanding payment of $2,326 - the cost of the cellular phones. Plaintiff disputes the debt because she returned the phones and cancelled her calling plan within the 14-day window and communicated this to Verizon.

When plaintiff did not pay, Verizon contracted with debt collectors to collect the debt and submitted plaintiff's account to Equifax, Experian, and Trans Union, reporting the amount as past due. Plaintiff alleges that the negative reporting has impacted her ability to refinance her home or otherwise obtain credit.

**B. The Arbitration Dispute**

Verizon has submitted three documents that include arbitration provisions purportedly presented to plaintiff at the time of sale – the Retail Installment Sales Contract (Doc. #21-2); the My Verizon Customer Agreement (Doc. #21-3); and the Verizon Wireless Customer Agreement (Doc. #34-1). Nevertheless, plaintiff challenges whether there is a valid agreement to arbitrate disputes stemming from the cancellation of the retail installment sales

agreements. Plaintiff argues that no valid arbitration agreement exists because Florida's RISCA requires that the installment contract be signed by both buyer and seller, and the Verizon Customer Agreements which are referenced in the installment contracts are cumulative to the installment contracts and require mutual signatures. Cuevas also argues that she cancelled the retail installment sales contract, precluding Verizon from relying on its provisions. Verizon argues that a customer cannot obtain a device payment plan without a signed customer agreement. Notably, the parties do not challenge the substance of the arbitration clauses standing alone.

### 1. Basic Principles Governing this Case

Under the Federal Arbitration Act (FAA)[5], arbitration agreements are "'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the [*sic*] contract.'" Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (quoting 9 U.S.C. § 2). Consequently, the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989).

---

[5] Neither party challenges the applicability of the FAA to settle disputes as outlined in the contract.

Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the dispute. 9 U.S.C. § 3. "Arbitration is strictly a matter of consent." Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 299 (2010) (citation omitted). If no agreement exists, arbitration cannot be compelled. 9 U.S.C. § 4. Despite the "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), the FAA does not authorize a court to compel arbitration if there is no agreement to arbitrate. EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002); AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).

The Eleventh Circuit has developed a two-step inquiry when considering a motion to compel arbitration. Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). First, the Court must determine whether the parties have actually agreed to arbitrate the dispute. This determination is made against the background of a "liberal federal policy favoring arbitration agreements." Id. "[A]rbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 350 (2011). And "[a] court cannot compel parties to arbitrate their dispute in the absence of [a] clear agreement to do so." Larsen v. Citibank FSB, 871 F.3d 1295, 1302 (11th Cir. 2017). In determining whether an agreement to arbitrate exists, the Court "appl[ies] ordinary

Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the dispute. 9 U.S.C. § 3. "Arbitration is strictly a matter of consent." Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 299 (2010) (citation omitted). If no agreement exists, arbitration cannot be compelled. 9 U.S.C. § 4. Despite the "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), the FAA does not authorize a court to compel arbitration if there is no agreement to arbitrate. EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002); AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).

The Eleventh Circuit has developed a two-step inquiry when considering a motion to compel arbitration. Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). First, the Court must determine whether the parties have actually agreed to arbitrate the dispute. This determination is made against the background of a "liberal federal policy favoring arbitration agreements." Id. "[A]rbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 350 (2011). And "[a] court cannot compel parties to arbitrate their dispute in the absence of [a] clear agreement to do so." Larsen v. Citibank FSB, 871 F.3d 1295, 1302 (11th Cir. 2017). In determining whether an agreement to arbitrate exists, the Court "appl[ies] ordinary

state-law principles that govern the formation of contracts." Id. at 1303. Here, the parties do not dispute that the contracts are governed by Florida law. The second step "involves deciding whether constraints external to the parties' agreement foreclosed arbitration." Klay, 389 F.3d at 1200.

### 2. Enforceability of the Arbitration Provisions

In construing contracts under Florida law, the Court must determine whether the contract language is unambiguous. Whether an ambiguity exists in the language of a contract is a question of law to be decided by the court. Wheeler v. Wheeler, Erwin & Fountain, P.A., 964 So. 2d 745, 749 (Fla. 1st DCA 2007) (citation omitted). Ambiguity exists only when contractual language "is susceptible to more than one reasonable interpretation." Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010). Where one or more provisions of a contract conflict, "they should be construed as to be reconciled, if possible." Bengal Motor Co., Ltd. v. Cuello, 121 So. 3d 57, 61 (Fla. 3d DCA 2013) (quoting Dodge City, Inc. v. Byrne, 693 So. 2d 1033, 1035 (Fla. 2d DCA 1997)). "In so doing, the court should strive to give effect to the intent of the parties in accord with reason and probability as gleaned from the whole agreement and its purpose." Arthur Rutenberg Corp. v. Pasin, 506 So. 2d 33, 34 (Fla. 4th DCA 1987). If reconciliation is not possible, "we must give the agreement a reasonable interpretation," which is a question of law. Kaplan v. Bayer, 782

So. 2d 417, 419 (Fla. 2d DCA 2001). "Only when a contract contains mutually repugnant clauses that actually conflict does an ambiguity exist." Harris v. School Bd. of Duval Cnty., 921 So. 2d 725, 733 (Fla 1st DCA 2006). Further, contract provisions should be read "harmoniously in order to give effect to all portions thereof." City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000).

### 3. Language of the Agreements

Verizon seems to no longer be relying on the Retail Installment Contract as a source of its right to arbitration (the Court notes that Verizon has still not presented the Court with a mutually-signed contract). Rather, Verizon argues that arbitration should be compelled based on the customer agreement for the calling plan (Doc. #34-1) and the plan's terms and conditions (Doc. #21-3).[6]

The Verizon Wireless Customer Agreements state in relevant part:

> **I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT (CA), INCLUDING THE CALLING PLAN (WITH**

---

[6] Plaintiff argues that the customer agreements are "cumulative" of the installment contracts. Although not elaborated, the Court believes that plaintiff is arguing that the customer agreements should be found void just like the installment contracts. However, plaintiff entered into two agreements that day at Best Buy which included arbitration provisions. One was for payment of the phones in installments and the other for the calling plan. Thus, the fact that the retail installment contracts might not be enforceable under Florida's RISCA does not necessarily invalidate the customer agreements.

**EXTENDED LIMITED WARRANTY/SERVICE CONTRACT, IF APPLICABLE), AND OTHER TERMS AND CONDITIONS FOR SERVICES AND SELECTED FEATURES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE RECEIPT, AND WHICH HAVE BEEN PRESENTED .TO ME BY THE SALES REP. AND WHICH I HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO . . . SETTLMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS AND OTHER IMPORTANT TERMS IN THE CA.**[7]

(Doc. #34-1 (emphasis in original).) This paragraph was just above plaintiff's signature.

The "My Verizon Wireless Customer Agreement" (Doc. #21-3) states in relevant part:

**HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?**[8]

**YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO AGREE THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE

---

[7] The Court assumes "CA" means Customer Agreement, a copy of which is at Doc. #21-3. In Florida, "where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." Gustavsson v. Wash. Mut. Bank, F.A., 850 So. 2d 570, 573 (Fla. 4th DCA 2003) (internal citation omitted).

[8] This section is also outlined by a box.

>   AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER
>   BUSINESS BUREAU ("BBB"), YOU CAN ALSO BRING ANY ISSUES
>   YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE OR LOCAL
>   GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN
>   SEEK RELIEF AGAINST US FOR YOU.

(Doc. #21-3, pp. 1, 7-8 (emphasis in original).)

The language in the lengthier "My Verizon Wireless Customer Agreement" (Doc. #21-3) is mandatory, unequivocal, and all-encompassing. By using such exclusive language, the parties agreed to arbitration or small claims court for any and all claims. However, the language in the "Verizon Wireless Customer Agreement" states that arbitration is permissive and inconsistently states that that Cuevas is agreeing to "settlement of disputes by arbitration *or other means instead of jury trials*." (Doc. #34-1 (emphasis added)). In other words, arbitration is not mandatory, and the "other means" are permitted as long as a jury trial is not involved.

### 4. Application of Principles to This Case

The Court is unable to reconcile the conflicting mandatory and permissive arbitration clauses in the customer agreements (Docs. ##23-1, 34-1.) Reading the agreements to give effect to all portions, the most consistent and reasonable interpretation is that the parties agreed to resolve disputes arising out of the agreements by arbitration, small claims court, or any other means not including jury trials. The "other means" plaintiff has chosen is to file her claims in this Court prior to Verizon invoking any

right to arbitration. And although plaintiff's Complaint includes a jury demand (Doc. #1), this is subject to being stricken.[9]

The Court is mindful that when it interprets provisions in agreements covered by the FAA, it must give regard to the federal policy favoring arbitration, and ambiguities as to the scope of arbitration clause itself must be resolved in favor of arbitration. See Moses H. Cone, 460 U.S. at 24-25; Morales v. Perez, 952 So. 2d 605, 607 (Fla. 3d DCA 2007) (noting that Florida public policy favors arbitration and any doubts should be resolved in favor of arbitration). However, the Court must also construe ambiguous language against the drafter and no party may be forced to arbitrate a dispute that the party did not agree to arbitrate. See BKD Twenty-One Mgmt. Co., Inc. v. Delsordo, 127 So. 3d 527, 530 (Fla. 4th DCA 2012). "The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." Mastrobuono v. Shearson Lehman Hutton, Inc., 514

---

[9] Indeed, the My Verizon Wireless Customer Agreement states:

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON WIRELESS AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON WIRELESS UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

(Doc. #21-3, ¶ 9 (emphasis in original).)

U.S. 52, 63 (1995). For these reasons, the Court denies Verizon's request to compel arbitration.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant Verizon Wireless Personal Communications, LLP's Motion to Reconsider its Previously-Denied Motion to Compel Arbitration (Doc. #34) is **GRANTED.** After reconsidering the matter and the newly submitted evidence, Verizon's request to compel arbitration is denied.

2. Plaintiff's Motion to Exclude Meryl Friedman's Affidavit on Reply and the Customer Agreements Attached to Verizon's Motion for Reconsideration (Doc. #45) is **DENIED.**

3. The Clerk is directed to transmit a copy of this Opinion and Order to the United States Court of Appeals for the Eleventh Circuit.

**DONE and ORDERED** at Fort Myers, Florida, this __16th__ day of November, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Eleventh Circuit Court of Appeals
Counsel of Record